110 F.3d 1400
 65 USLW 2665, 97 Cal. Daily Op. Serv. 2533,
97 Cal. Daily Op. Serv. 3962,
97 Daily Journal D.A.R. 4580,
97 Daily Journal D.A.R. 6779
 Shirley GEE; Ryan Jeffrey Gee; Sean Paul Fong, a minor by
and through his guardian ad litem Shirley Gee;
Patricia Seto; Samantha Seto; Corey
Seto, Plaintiffs-Appellants,
v.
SOUTHWEST AIRLINES, Southwest Airlines Company, Defendant-Appellee.
Herbert H. GADBURY, Plaintiff-Appellant,
v.
DELTA AIRLINES, INC., Foreign Corporation doing business in
Oregon, Defendant-Appellee.
Jan ROWLEY, Plaintiff-Appellant,
v.
AMERICAN AIRLINES, INC., Defendant-Appellee.
Donna COSTA, Plaintiff-Appellant,
v.
AMERICAN AIRLINES, INC.; Roe Corporation, Inclusive,
Defendants-Appellees.
 Nos. 95-17175, 95-36117, 95-36188, 95-56278.
 United States Court of Appeals,Ninth Circuit.
 Argued and Submitted Oct. 10, 1996.
Decided April 4, 1997.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc May 28, 1997.
 
 Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, DC, for plaintiffs-appellants in No. 95-17175.
 Robert J. Stumpf, Jr., Bronson, Bronson & McKinnon, San Francisco, CA, for defendant-appellee in No. 95-17175.
 Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, DC, for plaintiff-appellant in No. 95-36117.
 Steven O. Rosen, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant-appellee in No. 95-36117.
 Douglas L. Parker and Lisel Loy, Institute for Public Representation, Georgetown University Law Center, Washington, DC, for plaintiff-appellant in No. 95-36188.
 Steven O. Rosen and James N. Westwood, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant-appellee in No. 95-36188.
 Robert N. Herman, Paralyzed Veterans of America, Washington, DC, as amicus curiae in support of appellant in No. 95-36188.
 Debra E. Allen, Allen, Mullings & Allen, Santa Ana, CA, for plaintiff-appellant in No. 95-56278.
 Jeffrey A. Worthe and John R. Hanson, Worthe, Shaver & Hanson, Santa Ana, CA, for defendants-appellees in No. 95-56278.
 Appeal from the United States District Court for the Northern District of California, Claudia Wilken, District Judge, Presiding. D.C. No. CV-94-03983-CW.
 Appeal from the United States District Court for the District of Oregon, Donald C. Ashmanskas, District Judge, Presiding. D.C. No. CV-95-00336-DCA.
 Appeal from the United States District Court for the District of Oregon, Helen J. Frye, District Judge, Presiding. D.C. No. CV-94-00433-HJF.
 Appeal from the United States District Court for the Central District of California, Gary L. Taylor, District Judge, Presiding. D.C. No. CV-94-00660-GLT.
 Before O'SCANNLAIN, THOMAS G. NELSON and HAWKINS, Circuit Judges.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 In these actions, consolidated for argument, appellants sought damages against various airlines based on in-flight events ranging from loathsome behavior by fellow passengers to objects dropping on them from overhead bins. They appeal summary judgment grants to defendant airlines based on the preemption of the appellants' state tort claims by § 105 of the Federal Aviation Act (commonly referred to as the Airline Deregulation Act and referred to herein as the "ADA").[1] In addition, appellant Rowley also appeals the district court's denial of a motion in limine regarding the availability of punitive damages under the Air Carrier Access Act (the "ACAA"). We affirm the district courts' preemption decisions as to Gee and Rowley, but we find that Gadbury's and Costa's tort claims are not preempted, and we therefore reverse and remand to their respective district courts. We also hold that even if punitive damages were available under ACAA, Rowley has not alleged the type of wanton or malicious conduct necessary to support a claim for punitive damages, and we therefore affirm the district court's decision on this issue.
 
 FACTS AND PROCEDURAL HISTORY
 A) Gee v. Southwest Airlines
 
 2
 On August 22, 1994, Shirley Gee ("Gee") and her fellow Asian-American appellants boarded a Southwest Airlines ("Southwest") flight from Los Angeles to Oakland and sat behind a wedding party (the "Travis group"). The Travis group was noisy, and Gee asked some of the members to stop making so much noise. She also complained to a flight attendant and asked the attendant not to serve the group any more alcohol because they appeared to be intoxicated. Nevertheless, the attendant served one beer apiece to three members of the Travis group. Gee claims that after her complaint, the Travis group harassed her with racial slurs, pantomimed cocking and shooting a gun at Gee and her companions, and threatened to "get them" upon landing.
 
 
 3
 Appellants filed suit in California state court against Southwest for a variety of tort actions, including negligence per se for violation of FAA regulations against boarding or serving intoxicated passengers; negligence; negligent training and supervision; intentional and negligent infliction of emotional distress; respondeat superior; and violating California Code provisions protecting people from threats, harassment, intimidation or assault, including those based on race. Southwest removed the case to federal court on diversity grounds. The district court granted Southwest's motion for summary judgment on the grounds that the claims were preempted by § 105 of the ADA.
 
 B) Gadbury v. Delta Air Lines
 
 4
 Gadbury was a passenger on a 1993 Delta Air Lines, Inc. ("Delta") flight who alleges that during takeoff acceleration and banking, a door on a service cart swung open and struck his knee. Gadbury brought suit in Oregon state court alleging common law negligence, and Delta removed to federal district court. Delta admitted that the door opened after takeoff and that it "was not correctly latched by the flight attendants just prior to takeoff." The district court granted summary judgment for Delta, upholding a magistrate's finding that Gadbury's claim was preempted by § 105 of the ADA.
 
 C) Rowley v. American Airlines
 
 5
 Rowley is paralyzed from the chest down and requires a motorized scooter for mobility. Prior to a flight on American in August of 1993, she advised American that she would need an aisle chair (a narrow wheelchair which can be rolled between seats) to assist her in moving from the door of the plane to her seat. American assured her that such assistance would be available. American failed to provide the aisle chair in either Dallas or Portland, in violation of the ACAA. As a result, Rowley claims she was forced to make an arduous journey to and from her seat by holding on to seats and overhead compartments while American employees watched. Rowley also requested American to return her motorized scooter to the door of the plane in Dallas and Portland, but it failed to do so. In Portland, American also failed to reassemble the scooter for her after it had been disassembled for stowage.
 
 
 6
 Rowley filed suit in district court for compensatory and punitive damages under the ACAA, and asserted several state tort claims for intentional and negligent infliction of emotional distress. The district judge granted American's motion for summary judgment with respect to the tort claims, finding them to be expressly preempted by the ADA. Rowley also filed a motion in limine regarding the availability of damages under the ACAA, and the district court held that "federal law permits recovery of compensatory damages for violation of the ACAA, but not punitive damages."
 
 
 7
 The remaining compensatory damage claim under the ACAA was tried to a jury, which found that American did violate the ACAA by failing to provide the aisle chair and failing to return the motorized scooter to Rowley. The jury, however, awarded zero compensatory damages. Rowley appeals the summary judgment grant and the pretrial disallowance of Rowley's punitive damage claim.[2]
 
 D) Costa v. American Airlines
 
 8
 Costa was a passenger on a 1993 American Airlines ("American") flight who claims injuries from another passenger who opened the overhead bin upon landing, causing a suitcase to fall onto her head. The identity of the other passenger was never discovered, since American, pursuant to its routine policy, destroyed the passenger list 48 hours later. Costa brought suit in California state court against American and the "John Doe" passenger, alleging that American had violated its duty of care as a common carrier under California law, and that American's negligence in the maintenance and operation of the airplane and negligent management caused Costa's injuries. American removed the action to federal court and filed a motion for summary judgment, which the district court granted on the basis that Costa's claims were preempted by the ADA.
 
 DISCUSSION
 I. Preemption under the ADA
 A. Standard of Review
 
 9
 We review a district court's decision regarding preemption de novo. Espinal v. Northwest Airlines, 90 F.3d 1452, 1455 (9th Cir.1996). A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 B. Background
 
 10
 Each district court felt this court's decision in Harris v. American Airlines, Inc., 55 F.3d 1472 (9th Cir.1995), mandated preemption of appellants' claims. While Harris was not the first decision on the scope of ADA preemption, it was the most far-reaching. In Harris, an African-American woman sought damages for emotional distress caused by a drunk passenger's racial slurs, claiming American was negligent under state tort law for continuing to serve the inebriated passenger who was harassing her. Harris also sought recovery for intentional infliction of emotional distress and violation of Oregon's Public Accommodation Act. A sharply divided Harris court held all of Harris' claims preempted by § 105 of the ADA.
 
 
 11
 In previous decisions on ADA preemption, we considered the ADA's goals of airline deregulation or looked to FAA regulations for guidance in determining the scope of preemption. West v. Northwest Airlines, Inc., 995 F.2d 148 (9th Cir.1993), cert. denied, 510 U.S. 1111, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), concerned a damage claim for being "bumped" from a flight. Looking outside the bare preemption language, we held the claim was not preempted since an FAA regulation specifically contemplated that "the passenger may decline the payment and seek to recover damages in a court of law ...," and thus any other reading would eviscerate the FAA regulation. Id. at 152-153. We held, however, that West's right to pursue punitive damages was preempted, since awarding such damages would punish the airline for "accepted forms of price competition and reduction in the deregulation period," which would be contrary to the purposes of the ADA. Id. at 152.
 
 
 12
 Lathigra v. British Airways PLC, 41 F.3d 535 (9th Cir.1994), involved a tort action for negligent reconfirmation of a reservation. We held the claim was not preempted. Lathigra notes that even though there are no FAA regulations discussing remedies for negligent reconfirmation, the case against preemption is "even stronger than that in West," as the conduct giving rise to the complaint in no way serves the goals of airline deregulation as overbooking did in West. Id. at 540.
 
 
 13
 The Harris majority, however, made no such inquiry. Rather, it concluded that Harris' claims "pertain directly to a 'service' the airlines render: the provision of drink" and also relate to the crew's in-flight conduct, i.e., how the airlines treat intoxicated passengers. Harris, 55 F.3d at 1476. In fact, the Harris decision did not even mention the Lathigra precedent or attempt to reconcile the seemingly different analysis.
 
 
 14
 We recognize that Harris relied significantly on the Supreme Court's broad interpretation of the ADA's "relates to" language in Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Morales found NAAG guidelines on fare advertising (established through a state's general consumer protection laws) preempted by the ADA because the guidelines "relat[ed] to" airline "rates." Borrowing heavily from the broad interpretation of the similarly worded preemption provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), Morales acknowledged that there would be situations where the state action affecting rates, routes or service would be "too tenuous, remote or peripheral" to have any preemptive effect. Id. at 390, 112 S.Ct. at 2040. The Court, however, declined to express where it would be appropriate to draw the line. Id.
 
 
 15
 Two post-Morales Supreme Court decisions suggest that the approach taken in West and Lathigra, as opposed to Harris, is more appropriate. In American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court revisited ADA preemption and held that state law breach of contract claims for retroactive changes in an airline's frequent flyer program are not preempted, even though they "relate to" rates and service. Wolens saw these claims as an example of state law affording "recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id. at 228, 115 S.Ct. at 824. Wolens did, however, find a related state claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act preempted by the ADA, as it involved states "imposing their own substantive standards" with respect to rates, routes or service. Id. at 232, 115 S.Ct. at 826.
 
 
 16
 Wolens significantly backtracks from the expansive language of Morales. Although Morales seemed centered solely on the "relates to" language of the preemption provision, Wolens suggests that the outcome of Morales also hinged on the belief of the Department of Transportation and Federal Trade Commission that the NAAG guidelines were inconsistent with the ADA's deregulatory purpose, and that the guidelines created "binding requirements" on airlines that would have a significant impact on fares. Id. at 222-26, 115 S.Ct. at 821-22. Furthermore, dicta throughout the Wolens opinion suggests that the Court was concerned that Morales not be construed so broadly as to preempt personal injury negligence claims, such as those stemming from a plane crash. Id. at 231 n. 7, 234-38, 115 S.Ct. at 825 n. 7, and 240-42, 827-28, and 830. Finally, in holding that the state law claim for breach of contract was not preempted, the Wolens court notes that this outcome "makes sense of Congress' retention of the FAA's savings clause," which preserved the " 'remedies now existing at common law or by statute.' " Id. at 232, 115 S.Ct. at 826 (quoting 49 U.S.C.App. § 1506). Morales had characterized the same savings clause as "a relic of the pre-ADA/no preemption regime." 504 U.S. 374, 112 S.Ct. at 2037.
 
 
 17
 Furthermore, in a case decided a mere month before Harris, the Supreme Court stressed that interpretation of preemption provisions must start with the presumption that preemption is not intended, noting that in cases "where federal law is said to bar state action in fields of traditional state regulation ... we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear manifest purpose of Congress.' " New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, ----, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995) (internal citations omitted) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Harris seems to operate from precisely the opposite position--that there is a presumption of preemption from which exceptions, such as breach of contract claims, are carved. 55 F.3d at 1477.
 
 
 18
 Travelers may have other significant implications for § 105 of the ADA. Morales borrows its interpretation of the preemption clause entirely from a line of ERISA cases that interpreted "identical" relevant language. Morales, 504 U.S. at 383-85, 112 S.Ct. at 2037. Travelers, however, essentially reformulates the approach to this "identical" language. In Travelers, a unanimous Supreme Court admitted its prior attempts to construe the phrase "relate to" did "not give us much help drawing the line," noting that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course...." 514 U.S. at ----, 115 S.Ct. at 1677. The Court indicated that in interpreting "relate to," a court "must go beyond the unhelpful text ... and look instead to the objectives of [the statute] as a guide to the scope of the state law that Congress understood would survive." Id. It appears that the latter approach is in accordance with our precedent in West and Lathigra, while Harris seems to take "relates to" to the furthest stretch of its indeterminacy.
 
 
 19
 In this circuit, a panel cannot overturn a decision of a previous panel except by en banc review, unless there has been an intervening statutory change or Supreme Court decision. United States v. Gay, 967 F.2d 322, 327 (9th Cir.), cert. denied, 506 U.S. 929, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992). Since Travelers is not directly on point and Wolens, while perhaps recharacterizing Morales, did not overrule it, we remain bound to apply the Harris rationale, however outdated we may find its analysis.
 
 C. Gee and Rowley
 
 20
 Gee is virtually identical to Harris. Under Harris, Gee's negligence claim against Southwest for emotional distress is "related to" the service of alcoholic beverages to passengers and the crew's in-flight conduct towards unruly passengers. Therefore, Gee's claims are preempted under the ADA.
 
 
 21
 Similarly, Rowley's claim of emotional injury is grounded on the conduct of American employees who failed to provide assistance with her disability. Harris established that "the conduct of the flight crew relates to 'service' under the ADA." 55 F.3d at 1476. We find no real distinction between the Harris claims based on the "in-flight" conduct of the crew, and Rowley's claims based on the pre- and post-flight conduct of the American employees. If the provision of drink is an airline "service," then the assistance (or lack thereof) in boarding and deplaning passengers is also a service. Under Harris, Rowley's attempt to pursue state tort claims involves activities that "relate to" service and are thus preempted. We therefore affirm the decisions of the district courts on this issue with respect to Rowley and Gee.
 
 
 22
 D. "Operation and Maintenance" vs. "Negligent Rendition of Service"
 
 
 23
 The Gadbury and Costa claims, on the other hand, can be distinguished from Harris. Emotional injury claims stemming from the "negligent rendition of service" are quite different from safety-related personal injury or death claims concerning airline operations or maintenance. First, we believe the Supreme Court in Wolens clearly indicated that Morales should not be extended to preempt personal injury safety-related negligence claims, as reflected in the majority, concurring, and dissenting opinions. See Wolens, 513 U.S. at 231 n. 7, 115 S.Ct. at 825 n. 7 ("American does not urge that the ADA preempts personal injury claims relating to airline operations.");[3] id. at 234-38, 115 S.Ct. at 827-28 ("Presumably, if an airline were negligent in a way that somehow affected its rates, routes or services and the victim of the airline's negligence were to sue in state court, the majority would not hold all common-law negligence rules to be preempted by the ADA.") (Stevens, J, concurring); id. at 242, 115 S.Ct. at 830 ("[a]s the Court recognizes, my view of Morales does not mean that personal injury claims against airlines are always preempted.") (O'Connor, J., dissenting).
 
 
 24
 Secondly, we believe a distinction between "services" and "operations and maintenance" is mandated by a provision that the ADA added in 49 U.S.C. § 1371(q)(1) (recodified as 49 U.S.C. § 41112(a)). This provision requires airlines to obtain insurance or self-insure in order to pay amounts for which "an air carrier may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft...."[4] It would make little sense for Congress to require insurance to pay for bodily injury claims if airlines were insulated from such claims by the ADA's preemption provision. As in West, we cannot construe the preemption provision in a way that eviscerates complementary regulations or provisions that indicate remedies are available. Harris is reconcilable under this rationale because the insurance requirement pertains only to bodily injuries or death, not to emotional injuries such as those involved in Harris.
 
 
 25
 Finally, this distinction is harmonious with results reached in other circuit and district courts. See, e.g., Hodges v. Delta Airlines, 44 F.3d 334 (5th Cir.1995) (tort claim arising from luggage falling from overhead bin found to be related to the safe operation of a flight); Smith v. America West Airlines, Inc., 44 F.3d 344 (5th Cir.1995) (tort claim for negligent boarding of hijacker found to be "safety" related and not preempted); Stagl v. Delta Air Lines, Inc., 849 F.Supp. 179 (E.D.N.Y.1994) (no preemption of state common law cause of action for injuries incurred near baggage carousel), rev'd on other grounds, 52 F.3d 463 (2d Cir.1995); In re Air Disaster, 819 F.Supp. 1352 (E.D.Mich.1993) (finding preemption provisions do not apply to state negligence action based on injuries suffered in crash).
 
 E. Gadbury and Costa
 
 26
 Having decided to distinguish between claims relating to service and those pertaining to the operation and maintenance of the aircraft, we must now determine where the Gadbury and Costa claims fall. The ADA defines "operation of the aircraft" as "the use of aircraft, for the purpose of air navigation and includes the navigation of the aircraft." 49 U.S.C. § 40102(a)(32). "Service" is not defined in the act itself, and the Supreme Court has not attempted to define the scope of the term. We agree with the Fifth Circuit that there is no strict dichotomy between "operations and maintenance" and "service." Hodges, 44 F.3d at 339. Indeed, it is difficult to imagine a more critical airline service than aircraft navigation. As noted above, there is a presumption against preemption, especially absent the clear intention of Congress to preempt fields of traditional state regulation. Travelers, 514 U.S. at ----, 115 S.Ct. at 1676. Given this presumption, a claim fairly characterized as relating both to "service" and "operations" should not lead to preemption.
 
 
 27
 In Gadbury, Delta agrees that the service/operations distinction may be appropriate, but argues that Gadbury's claim is still preempted because it is more related to "service." Delta argues that Gadbury was injured by a "serving" cart, and the primary purpose of the cart is to provide on-board services, such as waste collection, to passengers. Delta's rationale would lead to absurd results: if Gadbury had been injured by a loose piece of safety equipment, rather than a loose piece of serving equipment, presumably Delta would admit the claim could proceed. Gadbury's claim stems from Delta's negligence in failing to properly latch the door during takeoff. We find that Gadbury's claim does not relate to airline "service" but rather is connected with the failure to take appropriate safety measures relating to the operation of the aircraft. Therefore, the claim is not preempted by the ADA, and we reverse and remand No. 95-36117 to the district court for further proceedings.
 
 
 28
 Costa's common law tort claims stem from her personal injury when luggage fell onto her from the overhead compartment. We agree with the Fifth Circuit's opinion in Hodges, which found that "whether luggage may be placed in overhead bins and whether the flight attendants properly monitor compliance with overhead rack regulations are matters that pertain to the safe operation of a flight," and thus are not preempted. 44 F.3d at 339.
 
 
 29
 Costa also makes a claim for negligent spoliation of evidence, based on American's destruction of passenger lists despite its notice of the incident. Although Harris interpreted "service" broadly enough to encompass the accoutrements of air travel, such as provision of food and drink, we are not persuaded that maintaining passenger lists is a "service" typically provided to passengers. Thus, this is not a claim that relates to "service" within the meaning of the ADA and is not preempted.
 
 
 30
 Many of Costa's claims pertain to violations of California civil code provisions that impose a higher duty of care on common carriers. The higher duty necessarily pertains to every action the airline takes. These are not laws of "general applicability" that happen to indirectly relate to airline service. Cf. Medtronic v. Lohr, 518 U.S. 470, ----, 116 S.Ct. 2240, 2257, 135 L.Ed.2d 700 (1996). We believe this statutorily imposed standard of care, like the NAAG guidelines in Morales or the Consumer Fraud Act action in Wolens, is an attempt by California to impose its own substantive standards on airlines.[5] We therefore find the civil code standard of care preempted by the ADA. Thus, even though Costa's tort claims may proceed, they should be evaluated under the common law standard of care. We reverse and remand No. 95-56278 for further proceedings.
 
 II. Punitive Damages and the ACAA
 A. Standard of Review
 
 31
 A district court's ruling on a motion which has the effect of dismissing a claim based on interpretation of a federal statute is reviewed de novo. United States v. Bahena-Cardenas, 70 F.3d 1071, 1072 (9th Cir.1995).
 
 B. Punitive Damages
 
 32
 Enacted in 1986, ACAA is utterly silent on the range of available remedies. The district court held that ACAA contains an implied right to compensatory damages, a decision from which American does not appeal. Rowley urges us to go one step farther and find an implied right to punitive damages as well. However, we need not reach the issue: we agree with American that even if punitive damages were available as a matter of law under ACAA, Rowley does not allege on these facts the type of wanton or malicious conduct that is required to recover punitive damages. See, e.g., Shinault v. American Airlines, Inc., 936 F.2d 796, 805 (5th Cir.1991) (quadriplegic passenger denied right to board plane due to a time constraint); Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 571-72 (8th Cir.1989) (minor with cerebral palsy denied the right to fly unaccompanied). Under former Section 404 of the Federal Aviation Act, we confined the availability of punitive damages to discrimination inflicted "wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." Hingson v. Pacific Southwest Airlines, 743 F.2d 1408, 1412 (9th Cir.1984) (quoting Archibald v. Pan American World Airways, Inc., 460 F.2d 14, 16 (9th Cir.1972)).
 
 
 33
 Rowley claims that American failed to provide her an aisle chair on four occasions and twice failed to return her motorized scooter to her at the plane. As a result of American's ACAA violations, Rowley alleges she had to walk (Rowley is ambulatory with concentration), by holding onto seat backs and overhead compartments, approximately ten feet to and from her seat. Rowley claims that no crewmember offered to help her, although one employee did offer her a glass of water and another told her that what she was holding onto was unstable. While American's conduct was regrettable and in violation of ACAA, it simply does not rise to the level of wanton or malicious conduct that could support punitive damages.[6] We therefore affirm the decision of the district court on this issue.
 
 
 34
 Therefore, the decisions of the district courts in Gee and Rowley are AFFIRMED, and the decisions of the district courts in Gadbury and Costa are REVERSED.
 
 
 35
 O'SCANNLAIN, Circuit Judge, specially concurring:
 
 
 36
 I concur in the results reached in Part I but write separately to express misgivings about the court's preemption analysis under the Airline Deregulation Act ("ADA"); I concur in Part II without reservation.
 
 
 37
 * The majority concludes that a distinction between "services" and "operations and maintenance" is mandated by a provision which Congress added to the ADA in 49 U.S.C. § 1371(q)(1) (recodified as 49 U.S.C. § 41112(a)). In light of this statutory provision and this court's decision in Harris v. American Airlines, Inc., 55 F.3d 1472 (9th Cir.1995), the majority constructs a seemingly simple rule: while the regulation of "services" is preempted by the ADA, the regulation of "operations and maintenance" is not. Although this rule is consistent with the result reached by the only federal appellate court to have yet addressed this issue, Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir.1995) (en banc), I regret that the rule's emphasis on a few words taken out of context needlessly muddles our preemption jurisprudence.[1]
 
 
 38
 I agree with the majority that the Harris decision is contrary to the weight of authority interpreting ADA preemption; nonetheless, this court is bound by the Harris holding that a common law negligence action constitutes a state's enactment or enforcement of a law, and is therefore preempted if it relates to the "price, route, or service of an air carrier." However, this court is not bound by the Hodges distinction that actions preempted because they "related to services" did not include "state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." Hodges, 44 F.3d at 336 (emphasis added). The Fifth Circuit's distinction between services and operations is problematic.
 
 
 39
 Because the majority's rule will no doubt yield confusing and conflicting results in the future, I write separately to emphasize that the only proper framework for evaluating preemption claims is Congressional intent. See, e.g., Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding that the purpose of Congress is the "ultimate touchstone" of the preemption analysis).
 
 II
 
 40
 The majority's distinction between airline services and aircraft operations and maintenance is misguided for two reasons. First, it is not supported by the Supreme Court's two airline preemption cases: American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) and Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In Wolens, the Supreme Court concluded that courts confronting this issue must determine whether the particular tort claims would interfere with the purpose of the ADA. The purpose of the statute, which includes § 1305(a)(1), was to "promote 'maximum reliance on competitive market forces,' " Wolens, 513 U.S. at 230, 115 S.Ct. at 824 (quoting Morales, 504 U.S. at 378, 112 S.Ct. at 2034), and § 1305(a)(1) itself was intended to ensure that states did not re-impose public utility-style regulation on airlines. Indeed, Congress enacted the ADA "[t]o ensure that the States would not undo federal deregulation with regulation of their own." Wolens, 513 U.S. at 222, 115 S.Ct. at 821 (quoting Morales, 504 U.S. at 378, 112 S.Ct. at 2034). Section 1305(a)(1) prohibits states from "impos[ing] their own public policies or theories of regulation on the operation of air carriers." Id. at 229 n. 5, 115 S.Ct. at 824 n. 5 (quoting brief of United States as amicus curiae ). I do not read these two cases to suggest that a state common law tort claim is preempted if it is related to airline services, but it is not preempted if it is related to aircraft operations or maintenance.
 
 
 41
 In California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., --- U.S. ----, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the Supreme Court construed the scope of the "relating to" language in ERISA's preemption provision, to which the Supreme Court looked for guidance in interpreting section 105 in Morales. In finding no preemption of a state law mandating prevailing wages for apprentice employees, Dillingham unanimously emphasized that the words "relating to" should not be applied with "uncritical literalism," but with an emphasis on the objectives of the statute and its effect on state law. Id. at ----, 117 S.Ct. at 838 (internal citation omitted). Of note is a concurring opinion by Justice Scalia (the author of Morales ), who was joined by Justice Ginsburg (the author of Wolens ). After citing statements from earlier decisions to the effect that ERISA's "relating to" language has an expansive sweep, Justice Scalia wrote that it would "greatly assist our function of clarifying the law if we simply acknowledged that our first take on this statute was wrong." Id. at ----, 117 S.Ct. at 843. In his view, "the 'relate to' clause of the pre-emption provision is meant, not to set forth a test for pre-emption, but rather to identify the field in which ordinary field pre-emption applies--namely, the field of laws regulating 'employee benefit plan[s]' " described in ERISA. Id. (emphasis in original). In light of the Supreme Court's preemption analysis in this recent case, this court's (and the Fifth Circuit's) test for airline preemption is archaic.
 
 
 42
 Second, a distinction between airline services and aircraft operations and maintenance is difficult to draw. For instance, the majority in Hodges had no difficulty viewing Hodges' claim as related to operations rather than services, while two dissenting judges concluded that the opposite view was equally clear. Because the ADA offers no definition for the term "services," courts are left to decide whether providing alcoholic beverages to intoxicated persons or warning passengers of the dangers of items falling from overhead compartments are related to an airline's "services" or "operations." As many an amateur philosopher has observed, everything is at least theoretically related to everything else. "For example, a damage claim by an airplane passenger hit by an article falling from an overhead bin would be preempted if the flight attendant dropped the article but not if the bin came open because of a latch that had not been properly maintained, or because the plane was jolted by turbulent weather. An airplane passenger who fell in an aisle would be prohibited from suing if the accident occurred when the passenger slipped on food dropped by a flight attendant, but not if the accident was caused by a sudden banking of the plane." Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 284 (Tex.Sup.Ct.1996). I can find nothing in the history of the ADA or in Morales and Wolens to suggest that Congress intended such a hodgepodge of results.
 
 III
 
 43
 Today's opinion is no more likely than the Harris decision to bring clarity to the airline preemption field. We can avoid anomalous results, however, if the analytical framework rests on the regulatory effect of the state tort claim. The proper inquiry then is whether the state common law tort remedies have the effect of frustrating the purpose of deregulation by interfering with the forces of competition. If the state law does not have the requisite regulatory effect, then it is simply " 'too tenuous, remote, or peripheral a matter' to have preemptive effect." Morales, 504 U.S. at 390, 112 S.Ct. at 2040.
 
 
 44
 Because we should have set our own house in order, I decline to embrace the majority's distinction between airline services and aircraft operations and maintenance.
 
 
 
 [1]
 Section 105 of the ADA, as recodified, reads as follows:
 [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart.
 49 U.S.C. § 41713(b)(1).
 
 
 [2]
 The district court granted American's motion in limine to prevent the introduction of evidence relating to punitive damages. See n. 5 infra
 
 
 [3]
 In Costa, American does urge that personal injury claims are preempted
 
 
 [4]
 There is also a regulation that requires airlines to give passengers written notice of the time period within which they may bring an action against the carrier for its acts, and any limitations on the amount of liability of a carrier. 14 C.F.R. § 253.5(b)(2)(1994). Again, this regulation would be meaningless if such actions were preempted by the ADA
 
 
 [5]
 We also note the dicta in Wolens suggesting that personal injury claims are not preempted does not address statutory tort claims. 513 U.S. at 231 n. 7, 234-38, 241-42, 115 S.Ct. at 825 n. 7, 827-28, 830
 
 
 [6]
 In fact, although the jury found American had violated ACAA, the jury did not even find Rowley to be deserving of compensatory damages
 
 
 [1]
 See Romano v. American Trans Air, 48 Cal.App.4th 1637, 56 Cal.Rptr.2d 428 (2d Dist.1996) ("[F]ocus on a few words taken out of context may lead to anomalous results, and it is our view that a more thoughtful, less quixotic rule emerges when the analytical framework is placed on the foundation of Congressional intent. This way, we do not parse the language of the statute but consider the economic motivation behind the ADA and look to whether the plaintiff's claim is 'related to a price, route or service.' From this perspective, we see that where the airlines have a legitimate interest to protect (the right to advertise their rates, set their routes, determine whether to provide food service on a particular flight), the states cannot interfere. But where there is no legitimate interest needing protection--as is the case when the issue is negligence--there is no preemption.") (internal citations omitted)