Cherie **CHARAS,** Plaintiff–Appellant,

v.

**TRANS WORLD AIRLINES, INC., Missouri corporation,** Defendant–Appellee.

Mildred **JACOBY,** Plaintiff–Appellant,

v.

**TRANS WORLD AIRLINES, INC.,** Defendant–Appellee,

and

John Doe, 1–10; Jane Doe, 1–10; Doe Corporations, 1–10; Doe Partners, 1–10; Doe Entities, 1–10, Defendants.

Bernice **GULLEY,** Plaintiff–Appellant,

v.

**AMERICAN AIRLINES; AMR Corporation; American Eagle Airlines,** Defendants–Appellees.

Elizabeth **NEWMAN,** Plaintiff–Appellant,

v.

**AMERICAN AIRLINES, INC.,** Defendant–Appellee,

and

Does 1 Through 50, inclusive, Defendants.

Robert A. BEVERAGE, Plaintiff–
Appellant,

v.

CONTINENTAL AIRLINES, INC.,
Defendant–Appellee.

Nos. 96–15490, 96–15543, 96–15791,
97–55115 and 97–15158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 23, 1998.

Decided Nov. 30, 1998.

Gerald A. Clausen and Edward M. Digardi, San Francisco, California, for appellant Gulley.

Saied Kashani, Frederick A. Meiser, Jr., A Law Corp., San Diego, CA (Eugene C. Gratz, Law Offices of Eugene C. Gratz, Laguna Beach, CA, on the briefs for Charas), for appellants Charas, Jacoby, Beverage, and Newman.

Stuart J. Starry (argued), Frank, Woodfill, Lucas & Pressler, LLP, Houston, Texas, Michael S. Danko (on the brief), O'Reilly, Collins & Danko, Menlo Park, California, for appellant Beverage.

Bonnie R. Cohen and Kymberly E. Speer, Nelsen, Greenberg & Cohen, San Francisco, California, for appellees Trans World Airlines, Inc., American Airlines, and Continental Airlines.

Donna H. Kalama, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, on the briefs for appellee Trans World Airlines.

Harry Carter, Higgs, Fletcher, and Mack, San Diego, California, arguing for appellee American Airlines.

Before: HUG, Chief Judge, BROWNING, FLETCHER, BRUNETTI, THOMPSON, FERNANDEZ, RYMER, T. G. NELSON, KLEINFELD, TASHIMA, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

These consolidated cases cause us to consider once again the circumstances under which the Airline Deregulation Act of 1978, 49 U.S.C. app. § 1305(a)(1) ("ADA"), preempts certain state law claims. Although we have addressed the scope of this statutory preemption before, we have taken these cases en banc sua sponte to rethink our previous decisions.[1] We now hold that in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry. Congress did not intend to preempt passengers' run-of-the-mill personal injury claims. Accordingly, we hold that Congress used the word "service" in the phrase "rates, routes, or service" in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail. In the context in which it was used in the Act, "service" was not intended to include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities. We expressly overrule our decisions in *Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir.1995), and *Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir.1997), to the extent that they are inconsistent with this interpretation.

### FACTUAL AND PROCEDURAL BACKGROUND

#### I. *Beverage v. Continental Airlines*

Robert A. Beverage was a passenger on a Continental Airlines flight. He claims that a flight attendant hit his shoulder with a service cart and caused him serious injuries, including a dislocated shoulder and a cracked and detached scapular prosthesis. Beverage filed a state tort claim against Continental for negligence and breach of contract. The district court concluded that the ADA preempted Beverage's claims and granted Continental's motion to dismiss. Beverage timely appealed the district court's ruling.

#### II. *Jacoby v. Trans World Airlines*

Mildred Jacoby was a passenger on Trans World Airlines. After the plane landed, another passenger opened an overhead bin and a large piece of luggage fell on Jacoby's head, causing her injuries. Jacoby filed suit in state court against TWA; the airline removed the case and filed a motion to dismiss. Finding that the ADA preempted Jacoby's claims against TWA, the district court granted the motion to dismiss. Jacoby appealed.

#### III. *Charas v. Trans World Airlines*

Cherie Charas, a passenger on a TWA flight, tripped over a piece of luggage allegedly left in the aisle by a flight attendant. Due to the fall, Charas claims that she suffered a fractured humerus and required a shoulder joint replacement. Charas sued TWA for negligence. In granting TWA's motion for summary judgment, the district court concluded that Charas's claims were preempted by the ADA. Charas timely appealed the district court's ruling.

#### IV. *Gulley v. American Airlines*

Bernice Gulley was a passenger aboard a small commuter airplane operated by American Airlines. Gulley has a bone condition that makes her susceptible to bone fractures. She claims that she advised American of her condition and informed the airline that she needed assistance in disembarking, but that American employees provided no help. Gulley exited the plane, unassisted, on a stairway with only a single, movable chain handhold. She alleges that she fell and sustained injuries.

Gulley brought a state negligence action against American. The district court held that although Gulley's claim for *negligent failure to provide safe equipment* involved

---

1. Because of the need to clarify the law in this area, these cases were taken en banc after they were assigned to a three-judge panel, but prior to the panel's rendering a decision.

the "maintenance and operation" of the aircraft and was not preempted, Gulley's claim for *negligent failure to assist her down the stairs* involved the rendering of "service" and was preempted by the ADA. Gulley appealed the district court's order granting American's motion for summary judgment.

## V. *Newman v. American Airlines, Inc.*

Elizabeth Newman's complaint stems from her attempt to fly from San Diego to Long Island on an American Airlines flight. Newman claims that in making her reservations, she informed American that she was blind, suffered from a heart condition, and required assistance in boarding the plane. She flew from Long Island to San Diego without incident. However, it is alleged that on her return flight to Long Island, a flight attendant attempted to check Newman's carry-on bags due to space constraints. At that time, the flight attendant learned that the bags contained Newman's medications. The flight attendant then informed the captain that Newman might have a disability that would preclude her from flying. The captain asked the flight attendant to ask Newman about her medication and to ascertain the phone number of Newman's doctor to verify whether or not Newman was at risk for a heart attack during flight. When Newman could not remember her doctor's number, American denied her passage until she could provide a letter from her doctor certifying that it was safe for her to fly.

Prior to obtaining the required certificate, Newman was required to stay overnight at a motel and suffered injuries when she fell upon boarding the shuttle bus transporting her there. She filed various claims, including state tort claims and federal statutory claims, against American. The district court granted American's motion for summary judgment, concluding that Newman's state law claims were preempted by the ADA and that American had "permissibly refused" boarding to Newman for the purposes of her federal claims. Newman timely appealed.

**2.** In 1994, section 1305(a)(1) was amended and incorporated into the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49

## DISCUSSION

### I. Background

Section 1305(a)(1) of the ADA provides:

[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to the rates, routes, or service of any air carrier....

49 U.S.C. app. § 1305(a)(1).[2]

Prior to 1978, the Civil Aeronautics Board had economic regulatory authority over interstate air transportation pursuant to the Federal Aviation Act of 1958, 72 Stat. 731, *as amended*, 49 U.S.C. app. § 1301 *et seq.* However, the Act did not expressly preempt state regulation, and further, it contained a "savings clause" providing that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. app. § 1506 (recodified at 49 U.S.C. § 40120(c)); *see American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). As a result, states were not prevented from enforcing their own laws, despite the economic effect on the airlines. *See California v. CAB*, 581 F.2d 954, 956 (D.C.Cir.1978) (holding that states were permitted to regulate intrastate airfares); *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 300–01, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (allowing states to enforce their own laws barring deceptive trade practices).

In 1978, Congress determined that efficiency, low prices, variety, and quality would be furthered by reliance on competitive market forces rather than pervasive federal regulation. *See* H.R. Conf. Rep. No. 95–1779, 95th Cong., 2d Sess. 53 (1978). To prevent states from "undo[ing] federal deregulation with regulation of their own," *Morales v. Trans World Airlines*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), Congress enacted § 1305(a)(1) which preempts state

U.S.C. § 41713(b), to prohibit the enforcement of any state law "related to price, route, or service of an air carrier."

laws "relating to the rates, routes, or service of any air carrier . . . ."

However, the scope of this preemption has been a source of considerable dispute since its enactment. In our own circuit, we have addressed the issue on several occasions. Prior to *Harris*, we held that the ADA did not preempt state law tort claims that were only "tenuously connected" with airline deregulation. *See Lathigra v. British Airways PLC*, 41 F.3d 535, 540 (9th Cir.1994) (looking to congressional intent, the panel concluded that the ADA did not preempt state tort actions for negligent reconfirmation because they did not undermine the goals of airline deregulation.); *West v. Northwest Airlines, Inc.*, 995 F.2d 148, 151 (9th Cir.1993) (holding that state law tort claim for compensatory damages was "too tenuously connected to airline regulation to trigger preemption under the ADA").

However, in 1995, we took a different approach. Harris brought a tort suit against American Airlines for continuing to serve alcohol to an intoxicated passenger who was harassing her. In declining to look beyond the bare preemption language to congressional intent, the majority, over Judge Norris's dissent, concluded that the ADA preempted Harris's claim because it "relate[d] to [a] service" that the airline rendered, namely the provision of a drink. *Harris*, 55 F.3d at 1476. The panel did not discuss or distinguish *West* or *Lathigra*.

Two years later, we wrestled with this problem again in *Gee*. There, we expressed doubts about *Harris* and the validity of its analysis. *See Gee*, 110 F.3d at 1404–05. However, in an attempt to mitigate the impact of *Harris*, we expressly adopted the Fifth Circuit's approach in *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir.1995) (en banc). *See Gee*, 110 F.3d at 1407. Under *Hodges*, claims related to an airline's "operations and maintenance" are not preempted by the ADA while claims related to a "service" provided by the airline are preempted. *Hodges*, 44 F.3d at 336–37. As Judges O'Scannlain and Jolly predicted in their re-

spective concurrences in *Gee* and *Hodges*, the distinction between an airline's operations and its service turned out to be as elusive as it is unworkable.[3]

Judge O'Scannlain noted that the operations-versus-service dichotomy invites nonsensical, inequitable, and inconsistent results, and in any event has nothing to do with the purpose of airline deregulation. *See Gee*, 110 F.3d at 1410. For example, under the rule announced in *Gee*, a plaintiff injured when struck by a beverage cart door would be able to bring a tort action if the door swung open because a bolt was missing (because the injury arises out of the "operations and maintenance" of the aircraft), but not if the flight attendant negligently failed to latch the door properly (because the flight attendant's conduct relates to "service"). Judge O'Scannlain demonstrated the folly of the distinction between "operations and maintenance" and "service," and suggested instead that the court examine whether the state laws underlying the claims frustrate the goal of economic deregulation by interfering with the forces of competition. *See id.* (O'Scannlain, J., concurring). If they do, the claims would be preempted; otherwise, they would not.

In reconsidering our view of the scope of the ADA's preemption, we conclude that Judge Norris and Judge O'Scannlain got it right and that *Harris* is contrary to congressional intent. Further, although we recognize that we were bound by *Harris* when we decided *Gee*, we now believe that the rule we adopted in *Gee* was imprecise, difficult to apply, and inadequately reflective of the ADA's goal of economic deregulation. Accordingly, in defining the "service" that the ADA preempts, we adopt Judge O'Scannlain's approach, an approach consistent with Supreme Court precedent and the ADA's plain language and legislative history.

## II. Supreme Court Precedent

The Supreme Court twice has addressed the scope of § 1305(a)(1). In both decisions,

---

3. In his concurrence, Judge Jolly opined that:
   The fact that the majority and the dissent disagree only on the application of this principle reveals that it promises uncertainty and inconsistent results. . . . I would prefer, instead of erecting these tenuous and uncertain judge-made distinctions, to rely upon the plain language of the provision. . . .
   *Hodges*, 44 F.3d at 340, 342.

the Supreme Court took great pains to articulate the boundaries of the preemption, indicating that the ADA would not preempt most state law tort claims. *See Wolens,* 513 U.S. at 230–33, 115 S.Ct. 817; *Morales,* 504 U.S. at 390, 112 S.Ct. 2031. In *Morales,* the Court faced the question of whether airlines were subject to states' laws banning deceptive advertising. The Court concluded that state restrictions on advertising were precisely the type of economic regulation that Congress intended to preempt in deregulating the airline industry:

> Restrictions on advertising serv[e] to increase the difficulty of discovering the lowest cost seller ... and [reduce] the incentive to price competitively .... [p]rice advertising surely 'relates to' price.

*Morales,* 504 U.S. at 388–89, 112 S.Ct. 2031 (internal citations and quotations omitted). As such, the Court held that state actions based upon these laws had the "forbidden significant effect" on rates, routes, or service, and thus were preempted. *Id.* at 388, 112 S.Ct. 2031. However, the Court explicitly limited its holding:

> [W]e do not ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines ... [s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner to have pre-emptive effect.

*Id.* at 390, 112 S.Ct. 2031 (internal citations and quotations omitted).

Likewise, in *Wolens,* the Court recognized the boundaries of § 1305(a)(1). In *Wolens,* the Court concluded that plaintiffs' claims for breach of contract, stemming from the airline's unilateral decision to devalue plaintiffs' frequent flier miles were not preempted. *See Wolens,* 513 U.S. at 222, 115 S.Ct. 817. In so doing, the Court held that Congress did not intend to preempt common law contract claims. And, although the majority did not specifically address whether personal injury claims would be preempted, both concurring opinions did. Justice O'Connor opined:

> Many cases decided since *Morales* have allowed personal injury claims to proceed, even though none has said that a State is

not "enforcing" its "law" when it imposes tort liability on an airline. In those cases, courts have found the particular tort claims at issue not to "relate" to airline "services," much as we suggested in *Morales* that state laws against gambling and prostitution would be too tenuously related to airline services to be preempted.

*Id.* at 242, 115 S.Ct. 817 (O'Connor, J., concurring in part and dissenting in part) (internal citations omitted).[4] Further, Justice Stevens noted:

> In my opinion, private tort actions based on common-law negligence or fraud ... are not pre-empted.... Presumably, if an airline were negligent in a way that somehow affected its rates, routes, or services ... the majority would not hold all common-law negligence rules to be pre-empted by the ADA.

*Id.* at 235–36, 115 S.Ct. 817 (Stevens, J., concurring in part and dissenting in part).

Although *Morales* and *Wolens* do not directly resolve whether the § 1305(a)(1) preemption encompasses state law tort claims, they certainly suggest that such claims are not within the intended reach of the preemption.

### III. Plain Language and Congressional Intent

Of course, in attempting to decipher the dimensions of the ADA's preemption clause, we must look first to the statute itself. We must attempt to "ascertain and give effect to the plain meaning of the language used," *Hughes Air Corp. v. Public Utils. Comm'n,* 644 F.2d 1334, 1337 (9th Cir.1981), but must be careful not to read the preemption clause's language in such a way as to render another provision superfluous. Furthermore, the Supreme Court has cautioned us that preemption provisions are narrowly and strictly construed, and has directed us to "look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *see also Medtronic, Inc. v. Lohr,* 518

---

**4.** In their criticism of her "total preemption" approach, the majority implicitly agreed with Justice O'Connor's conclusion that personal injury claims are not preempted by the ADA. *See Wolens,* 513 U.S. at 234, n. 9, 115 S.Ct. 817.

U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). We must consider

> two presumptions about the nature of preemption. First, because the States are independent sovereigns in our federal system, [the Supreme Court has] long presumed that Congress does not cavalierly pre-empt state-law causes of action.... Second, [the] analysis of the scope of the statute's pre-emption is guided by [the Court's] oft-repeated comment ... that the purpose of Congress is the ultimate touchstone in every pre-emption case.

*Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 (internal citations and quotations omitted). Moreover,

> [I]n all pre-emption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally occupied, ... [the court must] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Id.* (internal citations and quotations omitted).

It is evident that Congress's "clear and manifest purpose" in enacting the ADA was to achieve just that—the economic deregulation of the airline industry. Specifically, "the ADA ... was designed to promote 'maximum reliance on competitive market forces.'" *Wolens,* 513 U.S. at 230, 115 S.Ct. 817 (*citing* 49 U.S.C. app. § 1302(a)(4)). The purpose of preemption is to avoid state interference with federal deregulation. *See id.* Nothing in the Act itself, or its legislative history, indicates that Congress had a "clear and manifest purpose" to displace state tort law in actions that do not affect deregulation in more than a "peripheral manner." *See Morales,* 504 U.S. at 390, 112 S.Ct. 2031. Further, that Congress did not intend § 1305(a)(1) to preempt all state tort claims is evident from at least two other provisions of the airline regulatory statutes. First, airlines are still required to maintain insurance that covers "amounts for which ... air carriers may become liable for bodily injuries to or the death of any person...." 49 U.S.C. app. § 1371(q) (recodified as 49 U.S.C. § 41112(a)). Complete preemption of state law in this arena would have rendered point-less this requirement for insurance coverage. Second, the savings clause, § 1506, which provides that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law ...," read together with the preemption clause, evidences congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation. 49 U.S.C. app. § 1506 (recodified as 49 U.S.C. § 40120); *see also Morales,* 504 U.S. at 378, 112 S.Ct. 2031.

Understanding the objective of this legislation is critical to interpreting the extent of its preemption. In a recent case involving the interpretation and preemptive reach of the phrase "relates to" under ERISA, the Supreme Court explained that courts must examine " 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (*quoting* and *citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). The Supreme Court has twice looked to its interpretation of ERISA as an aid in interpreting the preemptive language of the ADA. *Wolens,* 513 U.S. at 223, 115 S.Ct. 817; *Morales,* 504 U.S. at 383–84, 112 S.Ct. 2031.

In its decisions interpreting § 1305(a)(1), the Supreme Court has not had occasion to define the term "service." In attempting to deduce its meaning, we are mindful that principles of statutory construction require us to consider the term within its context. *See Pension Benefit Guar. Corp. v. Carter & Tillery Enters.,* 133 F.3d 1183, 1186 (9th Cir.1998). Airlines' "rates" and "routes" generally refer to the point-to-point transport of passengers. "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of

transportation, and to the selection of markets to or from which transportation is provided (as in, "This airline provides service from Tucson to New York twice a day.") To interpret "service" more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended.

Nowhere in the legislative history, or in what remains of the federal airline regulatory statutes, does Congress intimate that "service," in the context of deregulation, includes the dispensing of food and drinks, flight attendant assistance, or the like.

## IV. Conclusion

We conclude that when Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct. Like "rates" and "routes," Congress used "service" in § 1305(a)(1) in the public utility sense—i.e., the provision of air transportation to and from various markets at various times. In that context, "service" does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions. We expressly overrule our decisions in *Harris* and *Gee* to the extent that they are inconsistent with this interpretation. Accordingly, we remand these cases to the panel for resolution consistent with this decision.[5]

**REMANDED TO THE PANEL.**

---

**5.** Our analysis of the preemption question does not touch any federal claims brought by plaintiff-appellants in these cases. The merits of all the claims in issue, federal and state, are left to the panel.