[No. B143427. Second Dist., Div. Five. Nov. 17, 2001.]

ARLENE VINNICK, Plaintiff and Appellant, v.
DELTA AIRLINES, INC., Defendant and Respondent.

**COUNSEL**

Magana, Cathcart & McCarthy, Richard L. Bisetti and Ann L. Mezzacappa for Plaintiff and Appellant.

Reily & Jeffery, David H. Reily, Janine K. Jeffery; and Jeffrey J. Ellis for Defendant and Respondent.

## OPINION

**ARMSTRONG, J.**—This case presents an issue concerning federal preemption of state negligence claims against airlines. More specifically, the claim at issue alleges injury related to the storage of baggage in an overhead bin. Similar questions have been litigated throughout the country, with various results. There is, for instance, a 21-page American Law Reports note entitled Liability of Air Carrier for Injury to Passenger Caused by Fall of Object from Overhead Baggage Compartment. (Annot. (1995) 32 A.L.R.5th 1; see also Kelly, *Federalism in Flight: Preemption Doctrine and Air Crash Litigation* (2000) 28 Transp. L.J. 107.) After a review of the relevant statutes and case law, we conclude that the plaintiff and appellant here, Arlene Vinnick, can proceed on her negligence claim against respondent Delta Airlines, Inc. The judgment is thus reversed.

### FACTS

Vinnick boarded a Delta plane about 6:30 a.m. She took her seat, an aisle seat. She fell asleep, but woke when another passenger's soft-sided luggage hit her on the head. She sued Delta and the other passenger, Karen Ballard, for negligence, alleging that they "negligently placed, stored and stowed and allowed to be placed, stored and stowed luggage in the overhead compartment, and said luggage fell upon plaintiff."[1]

As to Delta, Vinnick alleged a breach of California's common carrier standard of care under Civil Code section 2100.[2] Delta moved for summary judgment on the ground that there was no evidence that it had violated that standard of care, that the state standard did not apply because the matter was preempted by federal law, and that Vinnick had not alleged a breach of the federal standard of care.

At summary judgment, both parties submitted Ballard's deposition testimony describing the accident. Ballard was a standby passenger. She got on the plane with a book bag, which she was told could go under her seat, and

---

[1] Ballard joined in Vinnick's opposition to Delta's summary judgment motion. As far as our record reflects, the case against her is unresolved.

[2] The statute provides that "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

a carry-on bag. She looked for overhead storage for her carry-on bag. As she opened the door of an overhead bin, a bag in that bin began to fall out. She reached up to prevent that bag from falling, and her own bag, which she was holding about head height, slipped and made contact with Vinnick. Ballard was then able to put her bag in the overhead compartment, where it fit without difficulty. She did not ask a flight attendant for assistance at any time during the flight.

In addition to the facts just described, Delta proposed as undisputed that Ballard's carry-on bag was within the size and weight limitations for carry-on baggage. That proposed fact was supported by Ballard's testimony regarding the bag's weight, and by a portion of her deposition in which counsel measured the bag and determined that it was 15 inches wide, 12¾ inches tall, and 6¼ inches thick. These facts were also supported by the declaration of Gary Corn, Delta's manager of airport passenger services at Los Angeles International Airport, and portions of the Delta Standard Practice Manual, which generally hold that Delta employees should size carry-on baggage to ensure that no bag is larger than the "Size Wise" box, which measures 24 by 16 by 10 inches, and that carry-on bags may weigh no more than 40 pounds each.

Vinnick proposed as undisputed that Delta was a common carrier subject to Civil Code section 2100, and that Delta's own guidelines imposed a duty of care for ensuring the proper storage of all carry-on baggage. She based that fact on another portion of Delta's Standard Practice Manual, headed "Proper Stowage of Carry-On Baggage and Cargo in the Cabin." In pertinent part, it reads: "The [flight crew] is responsible for ensuring the proper stowage of all carry-on baggage."[3]

The trial court found that Delta was entitled to summary judgment because the field of airline safety was preempted by federal law, and because Vinnick failed to allege the correct federal standard of care or to introduce evidence of a violation of that standard.

---

[3]With its reply to Vinnick's opposition to summary judgment, Delta filed the declaration of its general manager of in-flight safety and service. He declared that Delta's carry-on bag policies were based on federal aviation regulations pertinent to carry-on luggage, and that the policy regarding flight crew responsibility referred to the flight crew's duty to be sure that bags were stowed in Federal Aviation Administration approved areas (overhead or under the seat) and were within size and weight limitations. At oral argument in this matter, Delta argued that this declaration established the federal standard of care regarding proper stowage of carry-on bags. We see no federal standard in the declaration, and indeed find the record devoid of citation to any such federal standard.

## DISCUSSION

### Premption

■ "Under the supremacy clause of the United States Constitution (art. VI, cl. 2), federal law preempts state law where Congress so intends. (*Fidelity Federal Sav. & Loan Assn.* v. *de la Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 675, 102 S.Ct. 3014] . . . .) . . . Since *M'Culloch v. State of Maryland* (1819) 17 U.S. (4 Wheat) 316 [4 L.Ed. 579], the United States Supreme Court has consistently held that federal preemption of state laws requires a clear congressional intent. Thus, preemption exists only where there is a ' "clear and manifest purpose of Congress" ' to foreclose a particular field to state legislation. (*Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 614, 97 S.Ct. 1305], quoting *Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146].)" (*Fenning v. Glenfed, Inc.* (1995) 40 Cal.App.4th 1285, 1290-1291 [47 Cal.Rptr.2d 715].) "Courts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it." (*Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630].) A preemption analysis begins with the presumption that federal statutes do not supersede the historic police powers of the state unless Congress has manifested a clear intent to do so. (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407].)[4] We do not believe Delta carried its burden here.

We begin our analysis with an examination of the relevant federal statute and the two United States Supreme Court cases on which the jurisprudence in this area depends, *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374 [112 S.Ct. 2031, 119 L.Ed.2d 157] and *American Airlines v. Wolens, Inc.* (1995) 513 U.S. 219 [115 S.Ct. 817, 130 L.Ed.2d 715].

---

[4]Delta contends that the presumption does not apply here, citing *United States v. Locke* (2000) 529 U.S. 89 [120 S.Ct. 1135, 146 L.Ed.2d 69]. We do not find the citation persuasive. *Locke* did hold that "an 'assumption' of nonpreemption is not triggered when the State regulates in an area where there has been a history of significant federal presence" (*id.* at p. 108 [120 S.Ct. at pp. 1147-1148]), but it did so in the context of preemption of state regulations governing interstate navigation, a field in which Congress has legislated "from the earliest days of the Republic, creating an extensive federal statutory and regulatory scheme." (*Ibid.*; see also *Congress of Cal. Seniors v. Catholic Healthcare West* (2001) 87 Cal.App.4th 491, 496 [104 Cal.Rptr.2d 655] [no presumption against preemption "where, as with Medicare, there is a history of significant federal presence in the field"].) The record here is bare of any reference to a federal statute or regulation that would relate to Vinnick's claim regarding storage of carry-on luggage.

*The federal statute*

The United States Supreme Court has explained that "Until 1978, the Federal Aviation Act of 1958 (FAA), 72 Stat. 731, as amended, 49 U. S. C. App. § 1301 et seq. (1988 ed. and Supp. V), empowered the Civil Aeronautics Board (CAB) to regulate the interstate airline industry. Although the FAA, pre-1978, authorized the Board both to regulate fares and to take administrative action against deceptive trade practices, the federal legislation originally contained no clause preempting state regulation. And from the start, the FAA has contained a 'saving clause,' § 1106, 49 U. S. C. App. § 1506, stating: 'Nothing . . . in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' [¶] In 1978, Congress enacted the Airline Deregulation Act (ADA), 92 Stat. 1705, which largely deregulated domestic air transport. 'To ensure that the States would not undo federal deregulation with regulation of their own,' *Morales* v. *Trans World Airlines, Inc.,* [*supra,*] 504 U.S. 374, 378 [112 S.Ct. 2031, 2034, 119 L.Ed.2d 157] . . . , the ADA included a preemption clause which read in relevant part: [¶] '[N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . .' 49 U.S.C. App. § 1305(a)(1)." (*American Airlines, Inc. v. Wolens, supra,* 513 U.S. 219, 222-223 [115 S.Ct. 817, 821, 130 L.Ed.2d 715], italics & fn. omitted.)

"The ADA also contains a savings clause which provides that '[a] remedy under this part is in addition to any other remedies provided by law.' 49 U.S.C. § 40120(c). This provision is a re-codification of FAA § 1506, which provided that ' "[n]othing . . . in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' " [Citations.]" (*Lewis v. Continental Airlines, Inc.* (S.D.Tex. 1999) 40 F.Supp.2d 406, 410.) The United Stated Supreme Court has described this clause as a "general saving clause," which is "a relic of the pre-ADA/no pre-emption regime," and which cannot supersede the specific substantive preemption provision. (*Morales v. Trans World Airlines, Inc., supra,* 504 U.S. at p. 385 [112 S.Ct. at p. 2037]; see *Hodges v. Delta Airlines, Inc.* (5th Cir. 1995) 44 F.3d 334, 337, fn. 7 [*Morales* accounted the savings clause "of marginal significance"].)

*Morales and Wolens*

The federal cases relevant to the issue before us depend on two United States Supreme Court cases which considered preemption under these statutes, *Morales v. Trans World Airlines, Inc., supra,* 504 U.S. 374 (*Morales*) and *American Airlines v. Wolens, Inc. supra,* 513 U.S. 219.

In *Morales*, the airline industry sought to enjoin state attorneys general from enforcing guidelines adopted by the National Association of Attorneys General, purporting to govern airline fare advertising. The opinion focused on the "relate to" language of the ADA's preemption clause. Reasoning from both the ordinary meaning and from case law interpreting similar language in the Employee Retirement Income Security Act of 1974 (ERISA) preemption clause, the court found that "the words thus express a broad pre-emptive purpose" (*Morales, supra,* 504 U.S. at p. 383 [112 S.Ct. at p. 2037]), and that the proposed state enforcement actions "related to" fares and were preempted.[5] Importantly, the court also found that Congress enacted the ADA's preemption clause "[t]o ensure that the States would not undo federal deregulation with regulation of their own." (*Morales, supra,* 504 U.S. at p. 378 [112 S.Ct. at p. 2034].)

As many courts have since noted, *Morales* concluded with the observation that "To adapt to this case our language in *Shaw* [*v. Delta Air Lines, Inc.* (1983) 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490]], '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect. 463 U.S., at 100, n. 21 [103 S.Ct. at p. 2901]." (*Morales, supra,* 504 U.S. at p. 390 [112 S.Ct. at p. 2040].)

In *American Airlines, Inc. v. Wolens, supra,* 513 U.S. at page 223 [115 S.Ct. at page 821] (*Wolens*), the court considered two consolidated state court class actions brought by participants in American Airlines' frequent flier program.[6] Those plaintiffs contended that changes in the program violated the Illinois Consumer Fraud Act and also constituted a breach of contract. The court first found that the claims related to rates and to services, that is, access to flights and upgrades. (*Wolens,* at p. 225 [115 S.Ct. at p. 822].) The court then focused on another portion of the ADA's preemption clause, the words "enact or enforce," and concluded that in light of the full text of the clause, and of the ADA's purpose to leave marketing mechanisms to the airlines, not to the states, the Consumer Fraud Act claims were preempted. (*Id.* at p. 228 [115 S.Ct. at pp. 823-824].) However, the court found that the preemption clause did not shelter airlines from suits alleging breach of contract, since those suits did not allege a violation of a state-imposed obligation, but instead sought recovery for the airline's alleged breach of its own undertakings.

---

[5]One federal court has noted that "Because the Court has used ERISA case law as a yardstick for construing the phrase 'relate to,' it is worth noting that it has recently narrowed ERISA's preemptive reach." (*Somes v. United Airlines, Inc.* (D.Mass. 1999) 33 F.Supp.2d 78, 81-82.)

[6]The case reached the Supreme Court on the airline's petition for certiorari, after the Illinois Supreme Court ruled that the plaintiffs' breach of contract and Consumer Fraud Act claims were not preempted by the ADA and could proceed. (*Wolens, supra,* 513 U.S. at p. 225 [115 S.Ct. at p. 822].)

*Wolens* wrote that its conclusion "also makes sense of Congress' retention of the FAA's saving clause, § 1106, 49 U.S.C. App. § 1506 (preserving 'the remedies now existing at common law or by statute'). The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." (*Wolens, supra,* 513 U.S. at pp. 232-233 [115 S.Ct. at p. 826].)

After *Morales* and *Wolens*, many federal courts considered federal preemption of state law tort claims against airlines, reaching varied results. These cases seem to follow one of three lines of analysis. Under two of them, represented by *Charas v. Trans World Airlines, Inc.* (9th Cir. 1998) 160 F.3d 1259 (*Charas*) and *Hodges v. Delta Airlines, Inc., supra,* 44 F.3d 334 (*Hodges*), Vinnick's claim is not preempted. *Abdullah v. American Airlines, Inc.* (3d Cir. 1999) 181 F.3d 363, on which Delta primarily relies, finds field preemption of the field of airline safety, but would allow state claims to proceed under a federal standard of care.[7] *Abdullah* is, however, inconsistent with California law. We thus find that Vinnick's claim is not preempted.

*Hodges and Charas*

*Hodges, supra,* 44 F.3d 334, is first in time, so we discuss it first. In that case, the Fifth Circuit Court of Appeals considered facts similar to our own: a passenger was injured when another passenger opened an overhead compartment and dislodged a case of rum. She brought a state law tort claim against Delta. The opinion begins by acknowledging that while *Morales* found broad preemption of state laws which relate to rates, routes or services, that case did not define "service." *Hodges* adopted a definition: " 'Services' generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or

---

[7]In a recent dissent from the Supreme Court's denial of certiorari in a case involving preemption under the ADA, Justice O'Connor wrote that *Charas* and *Hodges* were the two leading cases that represented a conflict which she believed the Court should resolve. The dissent does not mention *Abdullah* at all. (*Northwest Airlines, Inc. v. Duncan* (2000) 531 U.S. 1058 [121 S.Ct. 650, 148 L.Ed.2d 571].)

shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as 'services' and broadly to protect from state regulation." (*Id.* at p. 336.) *Hodges* then found that the plaintiff's claim did not relate to services, but to the operation of the airline, and was not preempted. (*Id.* at p. 340.) "[F]ederal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft." (*Id.* at p. 336.)

*Hodges* also found that its definition of services harmonized the ADA's preemption clause "with other sections of airline regulatory law, with Congressional intent underlying the ADA, with regulatory agencies' understanding of the statute, and with general principles of federal preemption." (*Hodges, supra,* 44 F.3d at p. 337.) In particular, *Hodges* cited the statutory requirement that airlines carry insurance for amounts for which they might become liable due to bodily injury or property damage "resulting from the operation or maintenance of the aircraft" (49 U.S.C. § 41112(a)), and the lack of a federal remedy for persons injured by aircraft operations. (*Hodges, supra,* at pp. 337-338.)

The Ninth Circuit Court of Appeals originally adopted the *Hodges* approach, in *Gee v. Southwest Airlines* (9th Cir. 1997) 110 F.3d 1400, but subsequently determined that the distinction between "services" and "operations and maintenance" was unworkable. In *Charas, supra,* 160 F.3d 1259, that court found that the focus in a preemption case should be on congressional intent. *Charas* found that congressional purpose of the ADA preemption clause was to avoid interference with economic deregulation.[8] Thus, the preemption question was "whether the state laws underlying the claims frustrate the goal of economic deregulation by interfering with the forces of competition." (*Id.* at p. 1263.) After considering the plain language of the preemption clause and the rule that in preemption cases, courts must start with the assumption that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (*id.* at p. 1265) *Charas* found that there was no " 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.' " (*Ibid.*)

Like *Hodges, Charas* found evidence of congressional intent in the federal statute requiring insurance for personal injury claims, and also found such

---

[8]*Charas* also found that while *Morales* and *Wolens* "do not directly resolve whether the § 1305(a)(1) preemption encompasses state law tort claims, they certainly suggest that such claims are not within the intended reach of the preemption." (*Charas, supra,* 160 F.3d at p. 1264.)

evidence in the savings clause of the Federal Aviation Act of 1958 (1958 Act), which, "read together with the preemption clause, evidences congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation. 49 U.S.C. app. § 1506 (recodified as 49 U.S.C. § 40120); see also *Morales*, 504 U.S. at 378, 112 S.Ct. 2031." (*Charas, supra,* 160 F.3d at p. 1265.)

*Charas* concluded that "when Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct. Like 'rates' and 'routes,' Congress used 'service' in § 1305(a)(1) in the public utility sense—i.e., the provision of air transportation to and from various markets at various times. In that context, 'service' does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions."[9] (*Charas, supra,* 160 F.3d 1259, p. 1266.)

The Third Circuit Court of Appeals later agreed with *Charas*, finding that "focusing on the competitive forces of the market, rather than on a strained and unsatisfactory distinction between 'services' and 'operations,' leads to a more accurate assessment of Congressional intent." (*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.* (3d Cir. 1998) 164 F.3d 186, 194 [claim that airline's letter to passengers defamed ticket agencies not preempted].)

Vinnick's claim here is essentially that Delta was negligent in failing to provide sufficient assistance to Ballard to allow her to safely store her carry-on bag, or was otherwise negligent in the manner in which it provided for the storage of carry-on luggage. Under both the *Hodges* and the *Charas* definitions of "services," there is no preemption of such a claim. Given that fact, we need not choose between the cases, and in fact find that in many important ways they are more alike than different. Both cases acknowledge that congressional intent is the touchstone preemption question and both acknowledge that the intent has been spelled out by the United States Supreme Court and that it concerns protection of economic deregulation. As the Third Circuit observed in this regard, "[w]hen state law does not have a

---

[9] The plaintiffs in *Charas* brought state law tort claims alleging injury after a flight attendant hit a passenger's shoulder with a service cart, injury caused after one passenger opened an overhead bin and luggage fell on another's head, and injury when a passenger tripped on luggage another passenger left in an aisle. Since *Charas* overruled the Ninth Circuit's earlier rule, all three cases were remanded for resolution consistent with the new approach.

regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted. *Morales,* 504 U.S. at 390, 112 S.Ct. 2031. We consider it highly unlikely that claims caused by careening service carts and plummeting luggage were to be removed from state adjudication." (*Taj Mahal Travel, Inc. v. Delta Airlines, Inc., supra,* 164 F.3d at p. 194.)

We also agree with *Hodges* and *Charas* that the federal requirement that airlines must carry insurance to cover claims like Vinnick's, and the lack of a federal remedy for such claims, are persuasive evidence that Congress did not intend to preempt state court negligence claims based on injury caused by falling luggage. And, like *Charas,* we find that this reading of the ADA harmonizes that act's preemption clause with the savings clause of the 1958 Act.[10]

*Abdullah*

In contrast, we find *Abdullah v. American Airlines, Inc., supra,* 181 F.3d 363, unpersuasive and contrary to controlling California authority. In that case, passengers injured during turbulence filed lawsuits alleging that the pilot and the flight crew were negligent in failing to take reasonable precautions to avoid turbulence and failing to give warnings so that passengers could fasten their seatbelts and protect themselves. The lawsuits were filed in the Virgin Islands and the cases were tried under territorial common law standards of care. The Third Circuit reversed, finding an implied field preemption. That is, the court found that "[b]ecause the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety, . . . *any* state or territorial standards of care are federally preempted." (*Abdullah, supra,* 181 F.3d at p. 371.) *Abdullah* relied on the history and intent of the 1958 Act, finding that "Congress found the creation of a single, uniform system of regulation vital to increasing air safety." (*Id.* at p. 368.)

*Abdullah* did not base its holding on the preemption clause of the ADA, which it characterized as "an economic deregulation statute which is inapposite to resolving preemption questions relating to the FAA and air safety." (*Abdullah v. American Airlines, Inc., supra,* 181 F.3d at p. 372.) *Abdullah* reasoned that the ADA concerned only competition and that "Airlines compete against one another by attracting passengers through the rates, routes, and services they offer. Congress did not want the states to hamper this competition by their own regulation of these areas. Safe operations, however, are a necessity for all airlines. Whether or not to conform to safety

[10]Thus, this is not, as Delta would have it, a case of the state using its common law to regulate in a federal field, a thing which it could not do directly.

standards is not an option for airlines in choosing a mode of competition. For this reason, safety of an airline's operations would not appear to fall within the ambit of the ADA and its procompetition preemption clause." (*Id.* at p. 373.) Further, *Abdullah* found that cases such as *Hodges* were based on an application of the maxim "to express one is to exclude the other" to the ADA's preemption clause, a line of reasoning which *Abdullah* found faulty, since the maxim cannot override the clear intent of Congress.

Finally, *Abdullah* ruled that "state and territorial tort remedies can coexist with federal standards of care for air safety," so that the plaintiffs could proceed with their actions, but only under a federal standard. (*Abdullah v. American Airlines Inc., supra,* 181 F.3d at p. 376.) *Abdullah* suggested that the federal standard was found in a regulation which provides that " 'No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.' " (*Id.* at p. 371; 14 C.F.R. § 91.13(a) (2001).)

The first problem with *Abdullah* is that it concerns preemption of the field of "air safety." It is not at all clear to us that Vinnick's claim can properly be so described, or that a federal regulation concerning the manner of *operation* of an aircraft can or should be applied to her case. The case is of uncertain relevance.[11]

Next, *Abdullah* does not seem to represent the prevailing view on the preemptive effect of the 1958 Act. For instance, *Cleveland v. Piper Aircraft Corp.* (10th Cir. 1993) 985 F.2d 1438 cited the savings clause of that act and found "this section shows that Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law," citing numerous other cases which so held. (*Id.* at p. 1442; see also *Somes v. United Airlines, Inc., supra,* 33 F.Supp.2d 78, 81 ["Before Congress enacted the ADA, it was understood that the 'savings clause' preserved state law personal injury actions"].) *Abdullah* itself notes that it "depart[s] from the precedent established by a number of cases which hold that federal law does not preempt any aspect of air safety," citing several cases. (*Abdullah v. American Airlines Inc., supra,* 181 F.3d at p. 368.)

Further, *Abdullah* is contrary to controlling California Supreme Court authority, *Elsworth v. Beech Aircraft Corp., supra,* 37 Cal.3d 540. There, the

---

[11]We similarly find that Public Utilities Code section 21240, cited by Delta, is of little relevance. That statute provides that "This state recognizes the authority of the federal government to regulate the operation of aircraft and to control the use of the airways, and nothing in this act shall be construed to give the department the power to so regulate and control safety factors in the operation of aircraft or to control use of the airways." Neither use of airways nor operation of an aircraft is at issue here.

heirs of passengers killed in a plane crash filed suit against the manufacturer of the plane. At trial, they proceeded in part on a negligence per se standard, alleging that the plane did not comply with FAA standards. On appeal, the defendant argued that the FAA's decision certifying the design of the plane had a determinative effect, and that the doctrine of preemption precluded the jury from finding it liable for negligence in the design of the plane on the basis of violation of FAA safety regulations.

The Supreme Court found no error, finding first that "there can be no question as to the intent of Congress to allow the states to apply their own laws in tort actions against aircraft manufacturers for the defective design of airplanes, in spite of the fact that federal law may have completely occupied the field of regulation of aircraft safety and certification. The Federal Aviation Act of 1958 expressly declared that its provisions are not intended to abridge remedies that a party may have under state law. (49 U.S.C.App. § 1506.) The doctrine of negligence per se is one of those remedies." (*Elsworth v. Beech Aircraft Corp., supra*, 37 Cal.3d at p. 549.) The court then found that "Since Congress has clearly allowed state tort remedies, the critical issues before us are not whether it has fully occupied the field of aircraft regulation, but whether there is an 'irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.' [Citation.]" (*Elsworth, supra*, 37 Cal.3d at p. 549.) The court found neither circumstance to be true.

The California Supreme Court thus found that the 1958 Act does not preempt state law-based causes of action, even when the design of a plane, a federally regulated area, is at stake.

Delta argues to the contrary, that California law holds that Vinnick's case is preempted under the 1958 Act. We see nothing in *Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866] or the other cases cited by Delta which so holds. In *Baker*, the California Supreme Court case considered nuisance claims based on airport noise and held only that "state law damage remedies remain available against an airport proprietor despite the fact that federal law precludes interference with commercial flight patterns and schedules." (*Id.* at p. 872.) *Bethman v. City of Ukiah* (1989) 216 Cal.App.3d 1395 [265 Cal.Rptr. 539] noted that since *City of Burbank v. Lockheed Air Terminal* (1973) 411 U.S. 624 [93 S.Ct. 1854, 36 L.Ed.2d 547], California courts considering preemption distinguished between state or municipal actions that "effectively regulate" the use of navigable airspace, aircraft traffic, or air flight safety, which are preempted, and those actions that concern

location and environmental impacts of airports, safety of ground maintenance facilities, and the manufacture of aircraft, which are not preempted.

### The common carrier standard of care

Our conclusion that Vinnick's claim is not preempted leads to the conclusion that she may proceed under California's common carrier standard. We are aware that there is authority to the contrary, in *Gee v. Southwest Airlines, supra,* 110 F.3d 1400. One of the plaintiffs in *Gee* presented a claim of falling-luggage injury similar to the facts here. *Gee* found that the claim related to operations, not services, and was not preempted, but also found that the plaintiff could not proceed under California's common carrier standard of care. Instead, her claims should be evaluated under the common law standard of care. *Gee* reasoned that the higher common carrier standard "necessarily pertains to every action the airline takes. These are not laws of 'general applicability' that happen to indirectly relate to airline service. *Cf. Medtronic[, Inc.] v. Lohr,* [518] U.S. [470, 499,] 116 S.Ct. 2240, 2257, 135 L.Ed.2d 700 (1996). We believe this statutorily imposed standard of care, like the NAAG guidelines in *Morales* or the Consumer Fraud Act action in *Wolens,* is an attempt by California to impose its own substantive standards on airlines. . . . Thus, even though [the plaintiff's] tort claims may proceed, they should be evaluated under the common law standard of care." (*Id.* at p. 1408.)

*Charas* overruled *Gee* only insofar as it was inconsistent with *Charas,* arguably allowing the ruling on duty of care to stand, but we cannot adopt the reasoning or result. Under the logic of both *Charas* and *Hodges,* the ADA's preemption clause does not affect Vinnick's claim. That clause prohibits states from enacting or enforcing laws which relate to an air carrier's rates, routes, or services. Since Vinnick's claim does not relate to rates, routes, or services, the ADA does not prevent her from proceeding in accord with California law, including Civil Code section 2100. Further, the 1958 Act specifically provided that the federal law does not "in any way abridge or alter the remedies now existing at common law or by statute." (49 U.S.C. former App. § 1506.) We thus see no justification for *Gee's* suggestion that although a falling-luggage claim is not preempted, application of the common carrier standard of care is.

*Elsworth v. Beech Aircraft, supra,* 37 Cal.3d 540, reinforces this conclusion. If California's negligence per se standard can be applied to a violation of federal standards, Vinnick may apply California's common carrier standard of care to her claim. (See also *Taj Mahal Travel, Inc. v. Delta Airlines, Inc., supra,* 164 F.3d at p. 195 ["[b]ecause the defamation claims are not

preempted, we conclude that customary remedies, including punitive damages, if warranted, survive as well."].)

*Delta's other arguments*

Delta makes a number of other arguments, none of which are persuasive. We do not see that the result we reach here is contrary to *City of Burbank v. Lockheed Air Terminal, supra,* 411 U.S. 624 [93 S.Ct. 1854, 36 L.Ed.2d 547], in which the Supreme Court considered a local ordinance which would have "severely limit[ed] the flexibility of the FAA in controlling air traffic flow" (*id.* at p. 639 [93 S.Ct. at p. 1862]) and held that state and local control of aircraft noise through regulation of aircraft flight was preempted by the Noise Control Act of 1972. (42 U.S.C. § 4901 et seq.; *City of Burbank v. Lockheed Air Terminal, supra,* 411 U.S. at pp. 633-635 [93 S.Ct. at pp. 1859-1861]; *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 375-376 [85 Cal.Rptr.2d 28].) It was in that context that the court made the finding cited by Delta, that a uniform and exclusive system of federal regulation was necessary to fulfill congressional objectives for the Federal Aviation Act. We see nothing in *City of Burbank v. Lockheed Air Terminal* that would indicate that the 1958 Act preempts state tort claims concerning baggage storage.

Other cases cited by Delta concern circumstances so factually distinct as to be unhelpful. *Northwest Airlines v. Minnesota* (1944) 322 U.S. 292 [64 S.Ct. 950, 88 L.Ed. 1283, 153 A.L.R. 245] concerns a state's power to tax an air carrier's airplanes, and Justice Jackson's concurring remarks on federal control of air commerce, quoted in Delta's brief, were made in that context. The question before the court in *C. & S. Air Lines v. Waterman Corp.* (1948) 333 U.S. 103 [68 S.Ct. 431, 92 L.Ed. 568] was whether the Civil Aeronautics Act authorized judicial review of Civil Aeronautics Board orders which grant or deny applications by citizen carriers to engage in overseas and foreign air transportation. (See also *French v. Pan Am Exp., Inc.* (1st Cir. 1989) 869 F.2d 1 [state statute regulating employee drug tests preempted when applied to pilots] and *Gustafson v. City of Lake Angelus* (6th Cir. 1996) 76 F.3d 778 [city ordinances prohibiting the operation of seaplanes on a lake not preempted].)

*Delta was not entitled to summary judgment*

We now turn to the facts of this case and find triable issues of fact sufficient to survive summary judgment. *Andrews v. United Airlines, Inc.* (9th Cir. 1994) 24 F.3d 39 presented similar facts. There, the plaintiff passenger was injured when a briefcase fell from an overhead bin and hit her

on the head. The parties agreed that United was a common carrier and that California's common carrier standard applied. At summary judgment, the plaintiff presented evidence that United had had 135 reports of items falling from overhead bins and for that reason had started warning passengers that items might have shifted during flight. She also presented an expert opinion that the warning was useless because passengers opening overhead bins could not see the items inside until it was too late, and that United could have retrofitted the bins with nets or allowed only light items into the bins. The Ninth Circuit found that it was a close question, but that plaintiff had made a sufficient case to overcome summary judgment.

It is true that Vinnick did not present evidence that Delta had had previous incidents. She did, however, present evidence that Ballard was not provided with any assistance in storing her carry-on bag, that luggage previously stored in the overhead bin was stored in such a way (or was of such a size) that it slipped when the bin was opened, and that those two facts meant that Ballard had to prevent that bag from falling while hoisting her own bag, causing injury to Vinnick. For purposes of summary judgment, under California's common carrier standard of care, that was sufficient.

### DISPOSITION

The judgment is reversed. Appellant is to recover her costs on appeal.

Grignon, Acting P. J., and Willhite, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied February 13, 2002.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.