# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 07-1266

BEATRICE RYES

VERSUS

HOME STATE COUNTY MUTUAL,
SCOUT TRANSPORTATION SERVICE, INC. AND
PHILLIP BOUDREAUX

**************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, DOCKET NO. 06-71074-C
HONORABLE JOHN CONERY, DISTRICT JUDGE

*************

**SYLVIA R. COOKS**
**JUDGE**
*************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Scott M. Hawkins**
**Chris Villemarette**
**Marikatherine Sonnier**
**Hawkins & Villemarette, L.L.C.**
**107 Regency Square**
**Lafayette, LA 70508**
**(337) 233-8005**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Beatrice Ryes**

**Michael J. Remondet, Jr.**
**Jeansonne & Remondet**
**Post Office Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Phillip Boudreaux**
      **Scout Transportation Services, Inc. and**
      **Home State County Mutual Insurance Company**

**COOKS, Judge.**

## STATEMENT OF THE FACTS

This appeal arises out of a one-vehicle accident involving a Peterbilt tractor-trailer rig owned by Phillip Boudreaux, leased by Scout Transportation Services and driven by Liney Ryes. Beatrice Ryes, Liney's wife, was a passenger in the vehicle. Liney and Beatrice Ryes are residents of Louisiana. Phillip Boudreaux's business is located in Louisiana. Scout Transportation Services, Inc. is a Texas-based company with an operational office in Broussard, Louisiana. The tractor-trailer rig was insured by Home State County Mutual Insurance Company. The rig contained the Scout Transportation company logo which provided as follows:

Operated by
SCOUT
Transportation Services, Inc.
Lafayette, La.

Phillip Boudreaux and Scout Transportation entered into a contract for lease of the tractor-trailer rig. The contract was executed in Louisiana. Liney Ryes was hired by Scout Transportation as a cross-country driver. The employment contract was executed in Louisiana by Mr. Ryes and a representative of Scout Transportation. As part of its normal operating policies, Scout Transportation allows its drivers to take certain passengers with them on interstate runs. Scout Transportation asserts this policy is an added incentive to entice a larger pool of drivers to consider employment with the company. Scout Transportation requires those passengers to sign a pre-accident waiver/release agreeing to release, indemnify and/or defend Scout Transportation and/or any driver, owner, lessor, lessee, bailee, insurer, agents and/or servants from any and all claims resulting from an accident. Before making the cross-country trip, Mrs. Ryes signed the pre-accident waiver/release in Louisiana.

On July 26, 2006, Mr. Ryes was driving the tractor-trailer rig on Interstate

1

Highway 70 in Colorado when the braking system allegedly failed on a descending slope of the highway. When he attempted to utilize the runaway truck ramp located between the highway and the side of the mountain, the rig struck the mountain and ricocheted off an embankment on the right side of the ramp, rolled over one-quarter time, and came to rest on its side. Two individuals were working on the escape ramp at the time. One individual dove under a parked semi-trailer and the other ran up the side of the mountain in order to escape collision with the runaway rig. Beatrice Ryes was severely injured in the crash.

Following the accident, Mrs. Ryes filed suit against Phillip Boudreaux, Scout Transportation and its insurer, Home State County Mutual Insurance Company. The Defendants answered the petition asserting Mrs. Ryes executed a written waiver/release of all claims against Scout Transportation. Mrs. Ryes filed a motion for summary judgment asserting the waiver/release is invalid under La.Civ.Code art. 2004. Scout Transportation filed a cross motion for summary judgment asserting federal law, 49 U.S.C. § 14501(c)(1), preempts state law and La.Civ. Code art. 2004 is not enforceable against a carrier engaged in interstate commerce. Alternatively, Scout Transportation argues if state law applies, then the law of Texas, not Louisiana, determines whether the pre-accident waiver/release is valid.

The trial court granted the motion for summary judgment in favor of Mrs. Ryes finding: (1) the federal statute in question does not preempt state law; (2) under Louisiana's conflict of law provisions found in Civil Code Articles 3515 and 3537, Louisiana law rather than Texas law applies; and, (3) under La.Civ.Code art. 2004, the pre-accident waiver/release was invalid. The Defendants appealed. For the reasons assigned below, we affirm the judgment of the trial court.

2

## LAW AND DISCUSSION

### Standard of Appellate Review

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate, i.e., (1) whether there is a genuine issue of material fact; and, (2) whether the mover is entitled to judgment as a matter of law. *Ocean Energy, Inc. v. Plaquemines Parish Gov't*, 04-66 (La. 7/6/04), 880 So.2d 1; *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2257 (La. 2/29/00), 755 So.2d 226. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

### State Law Negligence Claims and Federal Preemption

Scout Transportation relies on 49 U.S.C. § 14501(c)(1) (emphasis added) to support its argument that federal law preempts the enforcement of Louisiana's prohibition against pre-accident waivers contained in La.Civ.Code art. 2004. The federal statute in question provides, in relevant part:

(c) Motor carriers of property --

(1) General rule - Except as provided in paragraphs (2) and (3), *a State*, political subdivision of a State, or political authority of 2 or more States *may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier* (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

Louisiana's prohibition against pre-accident waivers of liability is contained in La.Civ.Code art. 2004 which provides, in relevant part:

Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other

3

party.

> Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party.

Scout Transportation asserts La.Civ.Code art. 2004 bars enforcement of the pre-accident waiver contained in the contract Mrs. Ryes signed and paves the way for a tort suit against the company. Scout Transportation contends any imposition of liability under Louisiana tort law would necessarily affect the "price" the company would charge for transporting interstate cargo. Further, Scout Transportation argues the enforcement of Louisiana's statute would limit its potential driver pool to those individuals agreeing not to travel with a spouse or close relative. Scout Transportation contends the company will be forced to change its "route and service" to avoid travel through Louisiana and risk incurring the financial burden the effects of La.Civ.Code art. 2004 would present. Scout Transportation relies on several cases to support is position that "any tort action 'where the subject matter of the action is related to the carrier's prices, routes, or services'" is preempted by the federal statute. *Beyer v. Acme Truck Line, Inc.,* 02-1, p. 6 (La.App. 5 Cir. 11/14/01), 802 So.2d 798, 800, *citing Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.* 972 F.Supp. 665 (N.D.Ga.1997).

We have examined the cases relied on by Scout Transportation and find they do not support the position that 49 U.S.C. § 14501(c)(1) prohibits Mrs. Ryes from asserting her state law tort claim against Scout Transportation or that the federal statute was meant to prevent a state from prohibiting contract provisions which would deny its citizens a tort remedy for damages resulting from the negligence of an interstate carrier.

The two cases relied on by Scout Transportation, *Beyer* and *Deerskin Trading Post,* involve suits seeking to enforce price controls on interstate carriers and are

distinguishable from the facts in this case. In *Beyer,* independent truckers filed a class action lawsuit against three trucking companies alleging the companies engaged in price fixing with oil companies. The plaintiffs asserted several causes of action all under Louisiana state law. The Louisiana appellate court held the plaintiffs' claims were directly related to the "price, route or service" of the interstate carrier and all state law claims were preempted by federal statute.

In *Deerskin*, the plaintiff asserted breach of contract claims under state law against UPS alleging UPS overcharged for shipping services to Deerskin customers. The federal appellate court held the plaintiff's state law claims were preempted. Significantly, however, the federal court distinguished personal injury suits which are only tangentially, not directly, related to a carrier's "price, route or service" and are not preempted by the federal statute.

There are three circumstances in which a federal law preempts state law: (1) when the federal statute expressly directs that the state law is invalid; (2) when Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme; or (3) when the state law conflicts with federal law or interferes with the achievement of federal objectives. *Air Transport Association of American v. Cuomo,* 520 F.3d 218 (2d Cir. 2008).[1]

The present suit deals with an area of law traditionally regulated by state law and which historically involves the most fundamental aim of a state's police powers, i.e., protecting the safety of its citizens and ensuring access to state courts for redress of injury. In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 112 S.Ct. 2608, 2617 (1992), the Supreme Court held any analysis of issues arising under the

---

[1]*Deerskin*, 972 F.Supp. 665, also held the preemption provision found in the 49 U.S.C. § 14501(c)(1), the relevant provision in this case, is identical to that found in the Airline Deregulation Act (ADA) making the cases involving suits against airlines applicable to our analysis in the present case involving interstate motor carriers.

Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone,* 505 U.S. at 516. (citations omitted); *See also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 1676 (1995), where the Supreme Court has stated that despite the "opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law."

In the area of personal injury suits against interstate carriers, the courts have found a state's interest in preserving a tort remedy for its citizens overrides any limited burden on interstate commerce. *See Vinnick v. Delta Airlines, Inc.*, 93 Cal.App. 4th 859 (Cal.Ct.App. 2001), where the court allowed a negligence claim against Delta Airlines when a passenger was injured by luggage falling from an overhead bin; *Stone v. Frontier Airlines, Inc.*, 256 F.Supp.2d 28 (D.Mass 2002), where the wife of a deceased airline passenger brought suit against the airline asserting a claim under state law that the carrier was negligent in failing to have a defibrillator aboard a plane; *Haynes v. Nat'l R.R. Passenger Corp.,* 423 F.Supp.2d 1073 (U.S.C.D. Ca.), which allowed a suit by a passenger against Amtrak for failure to warn against the dangers of deep vein thrombosis on extended trips; and *Kuehne v. United Parcel Service, Inc.,* 868 N.E.2d 870 (Ind. App. 2007), where a homeowner brought a negligence suit against UPS for injuries sustained when she tripped over a package left on her doorstep.

Moreover, the federal statute at issue reserves to the states the power to enact reasonable safety regulations, including route controls based upon vehicle size,

6

weight, and whether the vehicles were transporting hazardous cargo. The states have the authority as well to regulate minimum levels of financial responsibility. Section 14501(c)(2) provides in relevant part:

> **(2) Matters not covered**. - - Paragraph (1) - -
>
> **(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

Scout Transportation cites the Texas case of *Tamez v. Southwestern Motor Transp., Inc.*, 155 S.W. 3d 564 (Tex. App.-San Antonio 2004), to support its position that a pre-accident waiver of liability is valid under Texas law and should be enforced. The *Tamez* case arose in Texas. Texas, unlike Louisiana, allows a party to contract away its liability if certain requirements are met. In *Tamez,* the plaintiffs were seeking to avoid the effects of the pre-injury waiver by asserting under the federal statute they were "statutory employees" of Southwestern Motor and any waiver of liability by them in favor of the company is invalid under the federal statute. The *Tamez* court reviewed the history and amendments to the Federal Motor Carrier Safety Regulations and found nothing in the statute to prevent a driver-employee from executing a pre-accident waiver of liability. The court stated, prior to the amendments to the statute, interstate motor carriers attempted to insulate themselves from liability to third parties for negligent drivers by asserting the drivers were "independent contractors." The amendments to the federal statute required the carriers to assume full direction and control of the leased vehicles and imposed liability as a matter of law for the negligence of its drivers. The court stated:

> The purpose of the amendments to the act was to ensure that interstate motor carriers would be fully responsible for the maintenance and

7

operation of the leased equipment and the supervision of the leased drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred and providing financially responsible defendants.

*Id.* at 572.

The *Tamez* court found no bar under federal law to the enforcement of the pre-accident waiver executed in Texas by the driver-employee of the Southwestern Motor Transport rig. We agree with the *Tamez* court and find nothing in the federal statute which would prevent Louisiana from preserving a tort remedy for its citizens against the carrier by prohibiting a pre-accident waiver of liability. In fact, allowing the federal statute in this case to preempt Louisiana's ban against pre-accident waivers would allow Scout Transportation to shield itself from any financial responsibility for its own negligence – a result in direct conflict with the purpose behind the enactment of 49 U.S.C. § 14501(c)(1). We affirm the decision of the trial court finding the federal statute does not preempt Louisiana's ban against pre-injury waivers.

***Choice of Law***

Scout Transportation contends Texas law instead of Louisiana law applies to a determination of the validity of the pre-accident waiver of liability. In determining which state's law should be applied, we look to La.Civ.Code art. 3537 which provides, in relevant part:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning

8

of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition of the other.

Scout Transportation contends Texas law should apply to determine the validity of the pre-accident waiver because Scout is a Texas corporation. We have examined the record and find Louisiana has the greater interest in the application of its laws in this case. Both Liney and Beatrice Ryes are Louisiana citizens. The employment contract was executed in Louisiana, and the waiver was signed in Louisiana. Scout Transportation hired Liney in Broussard, Louisiana. The vehicle's owner, Phillip Boudreaux, is a Louisiana citizen. The rig is garaged and insured in Louisiana. Scout Transportation maintains an operational office in Broussard. The Scout rig contains a placard on the side of the vehicle which states the company is operated out of Lafayette, Louisiana. The load originated in New Iberia and was brokered from Broussard, Louisiana. The vehicle had brake maintenance performed in Lafayette, Louisiana. We find no error in the finding of the trial court that Louisiana has a significant interest in having its laws enforced and a vital interest in preserving a tort remedy for its citizens. We affirm the trial court findings that Louisiana law applies and under La.Civ.Code art. 2004 a pre-accident waiver of liability is invalid.

**DECREE**

Based on the foregoing review of the record, we affirm the decision of the trial court granting the Plaintiff's motion for summary judgment finding the pre-accident waiver/release of liability is invalid under Louisiana Civil Code Article 2004.

**AFFIRMED.**